UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID CAVENDER,
MICHELE BEAGLE,
MICHAEL DONDELINGER,

            Plaintiffs,

      v.

CRAIG OWENS, *in his official and
individual capacity*,

           Defendant.

No.: _____

## VERIFIED COMPLAINT
## FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND NOMINAL DAMAGES

COME NOW Plaintiffs, David Cavender, Michele Beagle, and Michael

Dondelinger (hereinafter, collectively "Plaintiffs"), who, by and through counsel,

bring this complaint pursuant to 42 U.S.C. § 1983, and the First and Fourteenth

Amendments to the United States Constitution, for equitable relief and nominal

damages, for the violation of the Plaintiffs' First Amendment Rights.

## INTRODUCTION

1. Defendant Craig Owens was displeased that certain persons, including the

    Plaintiffs, were publicly criticizing his performance as the Sheriff of Cobb

    County, Georgia. Instead of upholding the First Amendment and stomaching

speech he found personally distasteful, Owens decided instead to utilize the powers of his office to censor the speech of Plaintiffs, and others, based on viewpoint. Specifically, Owens deleted comments made by Ms. Beagle and Mr. Cavender, effectively censoring and silencing their speech, on the Cobb County Sheriff's Office official Facebook page ("Official Account"). Thereafter, Mr. Owens decided to censor all speech to prevent speakers with critical viewpoints from expressing their opinions.

## **PARTIES**

2. David Cavender is a citizen of Cobb County, Georgia, and resides within the district. Mr. Cavender has decades of combined experience in law enforcement and the military. Mr. Cavender is and was particularly concerned with law enforcement in Cobb County and opposed the re-election of Owens.

3. Mr. Cavender spoke publicly against Owens in many fora, but particularly posted critical remarks on the Official Account. Mr. Cavender ran an unsuccessful political campaign against Mr. Owens and plans to continue his campaign against Owens in the marketplace of ideas.

4. Mr. Cavender has in the past been prevented from posting on the Official Account and will continue to be prevented from posting on the Official Account in the future. As soon as the unconstitutional restrictions are removed from the account Mr. Cavender will again be commenting on the Official Account.

5.  Micheal Dondelinger is a citizen of Cobb County, Georgia, and resides within the district. Mr. Dondelinger is a law enforcement veteran and retired from the Cobb County Sheriff's Office after years of service. Mr. Dondelinger is and was particularly concerned with law enforcement in Cobb County and opposed the re-election of Owens.

6.  Mr. Dondelinger spoke publicly against Owens in many fora, particularly wished to post critical remarks on the Official Account, but was prevented from doing so. Mr. Dondelinger ran an unsuccessful political campaign against Mr. Owens, together with Mr. Cavender, and plans to continue to speak out against what he sees as maladministration of the Cobb County Sheriff's Office.

7.  Mr. Dondelinger has in the past been prevented from posting on the Official Account and will continue to be prevented from posting on the Official Account in the future. As soon as the unconstitutional restrictions are removed from the account Mr. Dondelinger will again be commenting on the Official Account.

8.  Michele Beagle is a citizen of Cobb County, Georgia, and resides within the district. Ms. Beagle is and was particularly concerned with law enforcement in Cobb County and opposed the re-election of Owens. Ms. Beagle is highly active within the public sphere and concerned with politics nationally and locally.

9.  Ms. Beagle spoke publicly against Owens in many fora, but particularly posted critical remarks on the Official Account. Ms. Beagle plans to continue to speak out against Owens and to continue to make public her discontent with his actions as the Cobb County Sheriff.

10. Ms. Beagle has in the past been prevented from posting on the Official Account and will continue to be prevented from posting on the Official Account in the future. As soon as the unconstitutional restrictions are removed from the account Ms. Beagle will again be commenting on the Official Account.

11. Mr. Owens is the Sheriff of Cobb County, Georgia. On information and belief, Mr. Owens is a citizen of Cobb County and resides within the district. When served, on information and belief, he will be subject to the jurisdiction of this Court.

12. As the Sheriff of Cobb County, Mr. Owens maintained and controlled the Official Account. On information and belief, he set all policies and practices of the Official Account and had final say over all relevant actions, including retaliatory censorship, that occurred on the Official Account during all times relevant to this Complaint.

13. At all times relevant to this Complaint Mr. Owens was acting under color of law.

## JURISDICTION AND VENUE

14. This Court may properly exercise jurisdiction over this complaint pursuant to 28 U.S.C §§ 1331, 1343(a), in that it is a civil rights matter brought under 42 U.S.C. § 1983.

15. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

16. Venue lies in this Court under 28 U.S.C. § 1391 because the events giving rise to the Plaintiffs' claims arose in this district.

## FACTS COMMON TO ALL COUNTS

17. Plaintiffs wish to engage in constitutionally protected speech on the Official Account and are currently being prevented from doing so because of certain restrictions Mr. Owens has put in place. Plaintiffs seek to comment and post on the Official Account as a whole and seek unfettered access to all posts of the Official Account.

18. The Official Account was created in or about January 2021.

19. The Official Account is associated with the Cobb County Sheriff's Office and is maintained by the Office rather than any individual. As the Sheriff of Cobb County, Mr. Owens, at all times relevant to this complaint, controlled and maintained the Official Account.

20. The Official Account is labeled an "official" account and the posts on the Official Account detail the doings of the Cobb County Sheriff's Office. The

Official Account is apparently operating under the authority of the Cobb County Sheriff's Office and in his role as Cobb County Sheriff, Owens has the actual authority to control the account and communicate with the public.

21. The posts published by Owens on the Account concern, as a general rule, the Cobb County Sheriff's Office and its official business.

22. In or about October 2024, Owens began making laudatory posts on the Official Account celebrating his performance as Sheriff and the accomplishments of the Cobb County Sheriff's Office during his tenure as Sheriff.

23. This was done, on information and belief, to better his chances of re-election in the run up to election day on November 5, 2024.

24. During the same time, *i.e.*, in October of 2024, a video of Owens utilizing Cobb County Sheriff deputies to intercede in a personal dispute with Burger King employees became viral. Owens had placed an order for a Whopper without mayonnaise, and to be cut in half, and apparently the staff had provided him a hamburger with mayonnaise. Rather than simply accept the order, or deal with it himself, he called deputies to have them intercede in the dispute on his behalf. Throughout the complaint, Plaintiffs refer to this controversy as the "Misuse of Public Funds."

25. In addition to this, also during October of 2024, it became clear that Owens was misrepresenting certain facts relating to his supervision of the Cobb County

Sheriff's Office. Specifically, Owens falsely claimed that for the first time in the Office's history "pepperball guns" were being utilized; they had in fact been used by the office for decades.

26. Additionally, controversy arose around the murder of an inmate within the Cobb County jail and the avoidance of legal process by Owens.

27. In reaction to all of the above, the public generally, and the Plaintiffs particularly, had been leveling harsh criticism against Owens.

28. Much of this criticism came in the form of comments on posts made on the Official Account.

29. Both Ms. Beagle and Mr. Cavender were making multiple comments that were critical, embarrassing, and critical on the Official Account.

30. This continued throughout October, but reached a tipping point in the final days of the month, specifically between October 25, 2024 and October 29, 2024.

31. Until this point there were no restrictions of any sort present on the Official Account any person could post about any topic. Even today the same remains true; however, Owens has put in place sweeping restrictions on all posts made after October 29, 2024.

32. On information and belief from October 29, 2024, Owens has utilized Facebook's "filtering tools" to limit the ability of the public to post on eleven

separate posts. There are thousands of other posts all of which remain open to comment on any topic by any person.

33. On information and belief, these restrictions were put in place because of the viewpoint of commenters' posts grew increasingly critical of Owens and his performance as Sheriff; in other words Owens put the restrictions in place to prevent the expression of a viewpoint.

34. On information and belief, a significant portion of the comments made between October 25 and October 28, 2024, focused on the embarrassing public controversies in which Owens found himself, including the Misuse of Public Funds which had received both local and national media attention.

35. Although these eleven posts cannot be commented on unless, on information and belief, you are a "friend" of the Official Account or "referenced" within the post, there remain no broad fora-wide restrictions on the Official Account.[1] Anyone can continue to comment on any particular topic but must do so on older posts which are not prominently displayed.

36. The Official Account, in its entirety is a designated public forum and from its inception has been open to all comment, on every topic, by every person.

---

[1] These Per-Post restrictions are similar to standardless permitting, *i.e.*, were a commenter a friend or referenced that commenter could post speech, but there were absolutely no standards by which that occurs other than the unbridled discretion of Owens.

37. The Official Account from its inception and over the course of years, sought public comment and to interact with the public absent any limitation, actively seeking interaction with the public.

38. Only after highly critical comments became the norm did the Official Account limit comments through post-specific limitation; limitations that do not affect the forum as a whole.

39. On information and belief, these restrictions were put in place to burden and disadvantage the critical speech then being posted on the Official Account.

40. During the period, from October 25, 2024 until October 29, 2024, virtually every post made by the Official Account had significant user engagement, *i.e.*, each post received numerous comments, and the majority of those comments were critical.

41. During the same time, the Official Account deleted, hid, or otherwise made unavailable multiple critical comments of users, including comments made by Ms. Beagle and Mr. Cavender.

42. On information and belief, five comments were deleted, hidden, or otherwise made unavailable.

43. On information and belief all of these deleted comments were critical of Owens.

44. On information and belief, these comments were deleted due to the viewpoints expressed.

45. On or about October 29, 2024, Ms. Beagle learned that posts on the Official Account purported to have comments limited. Ms. Beagle immediately commented on a post from October 29, 2024, which remained at the time open to comment and noted her concern that this practice might be violative of the First Amendment. Immediately after posting this comment, Ms. Beagle's comment was deleted, and the October 29, 2024 post on which Mr. Beagle had made her comment had its settings altered to prevent her from making further comment—Ms. Beagle was neither a friend nor referenced in the post.

46. On or about October 29, Mr. Cavender, and Mr. Dondelinger, noted the same limitations.

47. On the same day Mr. Cavender, unable to comment on newly made posts, posted a comment on an October 25, 2024 Official Account post, and published a comment relating to the Sherriff's avoidance of the service of legal process. This comment of Mr. Cavender's was likewise deleted, that same day.

48. Mr. Dondelinger, a relatively new Facebook user, had learned recently how to properly comment on other party's posts and wished to post on the Official Account. He attempted to do so on October 29, 2024, but was unable to post on a post newly made, prominently displayed post relating to deputy training published October 29, 2024 because the ability to comment on the same had

been curtailed and Mr. Dondelinger was not a friend nor referenced within the post.

49. On information and belief, because of the method in which Facebook is utilized commenting on recent posts rather than older posts has a drastic effect on the audience one's comment will reach and the interaction that will be had with one's comment. Older posts appear lower on a user's Facebook account and require the other user to scroll down the page to locate the older account—in essence the newer the post the more prominently it is placed. Thus comments on older posts are in effect hidden and likely will never be seen by any other Facebook user/interacted with by any other Facebook user—commenting on a weeks-old post is the same as screaming into the void, it is generally futile.

50. Facebook allows its users to impose various restrictions on the ability of the public to comment or participate on both entire pages ("Forum-wide Restrictions") and specific posts ("Per-Post Restrictions"), but by default all posts can be commented on by all users.

51. Owens has never utilized Forum-wide Restrictions and has only placed Per-Post Restrictions on a handful of posts. This was done immediately after the tone and tenor of the comments became highly critical of Owens and his conduct. On information and belief, the Per-Post Restrictions were put in place to

suppress speech that was critical of Owens, including specifically the speech made by Plaintiffs.

52. Facebook does not allow users to bar all comments or interaction through an alteration of settings alone, such can only be accomplished through settings and additional actions.

53. On information and belief, Owens utilized at different times and on different posts a "Friends Only" restriction, which limits the ability of users who are not friends and followers to comment on specific posts, and a "Reference Restriction" which prevents any user not referenced in the post itself from commenting on a post.

54. Of the eleven posts which are subject to Per-Post Restrictions, Owens allowed comments on five of those posts before putting in place the restrictions, and on information and belief certain select users remain able to comment even on those eleven posts.

55. After beginning to utilize the Per-Post restrictions, Owens posted a *post hoc* pretextual explanation of the censorship on November 1, 2024:

> The Cobb County Sheriff's Office is committed to creating an informative, safe and respectful space on our social media channels. To help ensure our posts continue to focus on providing community safety updates and educational information about the Sheriff's Office and what we do, we have turned off the comments feature. Noone will be able to comment on posts although Facebook may display that comments are "limited," all posts will be restricted from being able to comment. We remain dedicated to keeping residents, visitors, and

stakeholders informed while maintaining a respectful online environment . . .

56. The pretextual explanation is not only demonstrably untrue—various users remain able to comment on the Official Accounts posts: absolutely any user may comment on virtually anything whatsoever on well over 99% of the forum's posts; any user referenced in the Reference Restricted posts may comment on that post; and any friend or follower may comment on Friends Only posts—but also fails to set forth any standards by which one may gain the ability to comment on newly made posts, *i.e.*, posts which are Reference Restricted or Friends Only.

57. Owens continues to allow certain persons to comment on new posts and has set forth no objective written standards as to who may do so, and how one might gain such permission, either by becoming a friend/follower or by being referenced in the post. Owens exercises complete and unbridled discretion over such friend selection and as to who is referenced in posts.

58. Moreover, even assuming that the pretextual explanation is true, the Per-Post Restrictions do not appear to further the goals stated, none of the previous comments interfered with the ability of the Official Account to provide educational information, safety information, community safety updates, or the maintenance of a "safe" or "respectful" space, nor do the Per Post Restrictions limit all comment.

59. Moreover, the restrictions act as a prior restraint to the vast number of public users and commenters.

60. Further, any number of restrictions or regulations would better further those pretextual goals while burdening less speech. Owens could have established and enforced clear rules of etiquette for public comments on the Official Account, including rules against disrespectful, distracting, unsafe, repetitive, or off-topic comments. He could have set forth clear guidelines on what comments would be deleted or blocked. He could have completely closed off the forum to public comment as said, this at least would affect all parties uniformly, be coherent, and actually be true—again the pretextual explanation simply is untrue. He could have put in place word filters. He could have set forth a coherent system on which posts would be subject to Per Post Restrictions or any other number of other less onerous regulations.

61. No plaintiff, and on information and belief, no person, has ever made a comment that is pornographic, obscene, threatening, inciting violence, or otherwise not protected by the First Amendment on the Official Account.

## COUNT I

**Retaliation for Exercise of First Amendment Free Expression under 42 U.S.C. § 1983**
(*By Ms. Beagle and Mr. Cavender against Defendant in his individual and official capacity*)

62. Plaintiffs incorporate all allegations set forth above as if set forth here at length.

63. Ms. Beagle and Mr. Cavender engaged in constitutionally protected speech throughout October 2024 by commenting on the posts of the Official Account.

64. Specifically, the comments made on or about September 29, 2024, referenced in paragraphs 45 and 47, were speech protected by the First Amendment ("Actively Punished Speech").

65. Mr. Owens deleted, hid, or otherwise made unavailable to the public the Actively Punished Speech, censoring that speech and effectively silencing Ms. Beagle and Mr. Cavender.

66. Moreover, Owens has prevented Ms. Beagle or Mr. Cavender from making new comment similar to the Actively Punished Speech on newly published posts on the Official Account, which has the effect of hiding their speech and removing it from public sight.

67. Such conduct would deter a person of ordinary firmness from the exercise of First Amendment rights. Moreover, the blocking of Plaintiff from commenting on current posts is a prior restraint on their future speech.

68. On information and belief both the Per-Post Restrictions that Owens has put in place and the deletion of the Actively Punished Speech was the result of the viewpoints expressed by Ms. Beagle and Mr. Cavender; the viewpoints of the protected speech was the but for cause of both the retaliatory deletion and the Per-Post Restrictions put in place by Owens.

69. Plaintiffs were damaged by the conduct of Owens related above and are suffering ongoing injury as a result of the retaliation complained of above.

70. Monetary relief will not fully recompense Plaintiffs for this continuing and irreparable injury.

71. Plaintiffs seek injunctive relief requiring Defendant to (1) cease its unlawful practice of retaliatory censorship Plaintiff's comments on the Facebook page due to viewpoint discrimination and to restore all deleted, removed, or otherwise hidden comments on the Official Account; (2) cease the current unconstitutional and standardless practice of deleting comments, blocking posters, and restricting commenters to those who are friends or referenced within posts, *i.e.*, the Per-Post Restrictions; (3) restore posting privileges to the eleven posts that have been blocked and afford Plaintiffs full access to comment on all posts on the Official Account; and (4) require the Defendant to set forth clear standards that limit discretion of Defendant should the Defendant attempt to regulate future speech on the Official Account concurrently with the implementation of any such future regulation.

72. Additionally, because a controversy has arisen between Owens and Plaintiffs Beagle and Cavender, Plaintiffs seek a declaration that the retaliatory and discriminatory practices described above violate Ms. Beagle's and Mr. Cavender's First Amendment rights.

## COUNT II

***Violation of Plaintiff's First and Fourteenth Amendment Right to Free Speech
under 42 U.S.C. § 1983***
(*By All Plaintiffs against Defendant in his individual and official capacity*)

73. Plaintiffs incorporate paragraphs 1-61 and 63-70 as if set forth her fully at
length.

74. Speech utilizing Facebook and other social media pages for governmental
bodies is subject to the same First Amendment protections as any other speech.

75. The Official Account is a designated public forum, or alternatively a limited
public forum.

76. Speech posted on the Official Account, specifically the speech of Plaintiffs'
made on the Official Account and wish to make on the Official Account, is
protected speech.

77. Defendant's retaliatory censorship, including the deletion of and censorship of
speech based on viewpoint constitutes a viewpoint discrimination and violates
the First Amendment.

78. Defendant's prospective censorship of Plaintiffs' speech through Per-Post
Restrictions constitutes a prior restraint and violates the First Amendment.

79. Defendant's Per Post Restrictions were put in place to suppress speech based on
the viewpoint expressed and is forbidden under the First Amendment.

80. In any event the Per Post Restrictions lack any concrete standards and allow Owens unbridled discretion to limit any post to "friends" or "followers" and to those "referenced" without clearly setting forth standards of who may belong to those groups or upon which posts the Per Post Restrictions may apply and on what basis.

81. Further, the restrictions complained of are neither narrowly drawn nor reasonably necessary to further a legitimate government interest. Indeed, in this case there is no legitimate government interests because on information and belief Owens has put in place the restrictions solely to burden speech and speakers based on viewpoint.

82. Defendant's actions constitute direct attacks on the speech of Ms. Beagle and Mr. Cavender; chill the speech of the citizenry more broadly; and prevent Mr. Dondelinger and other concerned citizens from utilizing a designated public forum.

83. Defendant violated and continues to violate a clearly established constitutional rights of Plaintiffs.

84. The Plaintiffs, as well as all of the members of the public who are subject to the unconstitutional restrictions, are suffering an ongoing irreparable injury, namely they are being prevented from exercising their First Amendment rights.

85. There exists an actual controversy as to whether the above actions violate the First Amendment and a judicial declaration as well as injunction are necessary.

86. Plaintiffs seek injunctive relief requiring Defendant to (1) cease its unlawful practice of retaliatory censorship Plaintiff's comments on the Facebook page due to viewpoint discrimination and to restore all comments which have been deleted, hidden, otherwise made unavailable on the Official Account; (2) cease the current unconstitutional and standardless practice of deleting comments, blocking posters, and restricting commenters to those who are friends or referenced within posts; (3) restore posting privileges to the eleven posts that have been blocked and afford Plaintiffs full access to comment on all posts on the Official Account; and (4) require the Defendant to set forth clear written standards that limit discretion of Defendant should the Defendant attempt to regulate future speech on the Official Account concurrently with the implementation of any such future regulation.

87. Plaintiffs seek a declaration that the acts described above violate the First Amendment; Plaintiffs specifically request that the Court declare that the retaliatory imposition of Per-Post Restrictions based on viewpoint violates the First Amendment.

88. Because Plaintiffs have suffered damage, as a result of the actions set forth above, each Plaintiff seeks nominal damages in the amount of $3.50 against Defendant in his individual capacity.

WHEREFORE, Plaintiffs respectfully request this court:

A.  Assume jurisdiction over this action;

B.  Hold a jury trial on all issues so triable;

C.  Award nominal damages to each Plaintiff against Defendant in his individual capacity in an amount of $3.50 or any other amount to be determined by jurors;

D.  Award reasonable attorney's fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law;

E.  Enter the preliminary injunctive relief, requested in the concurrently filed motion for preliminary injunction, and schedule a hearing for the same as soon as reasonably practicable;

F.  Declare the actions of Defendant Owens, including the retaliatory imposition of Per-Post Restrictions, to be view-point based restrictions in violation of the First Amendment;

G.  Enjoin the Defendant's unlawful practice of retaliatory censorship of Plaintiffs' comments on the Official Account and enjoin the Defendant

from deleting comments, blocking posters, or restricting commenters to those who are friends or referenced within posts;

H. Enter a mandatory injunction requiring Defendant to restore all comments deleted, hidden, or otherwise made unavailable on the Official Account, requiring Defendant to restore posting privileges to the eleven posts that have been restricted through Per-Post Restriction, requiring Defendant to afford Plaintiffs full access to comment on all posts on the Official Account, and requiring the Defendant to set forth clear standards that limit discretion of Defendant should the Defendant attempt to regulate future speech on the Official Account concurrently with the implementation of the regulation put in place;

I. Award such other and further relief as this Court deems just and proper.

Respectfully submitted this 13th day of November, 2024.

> */s/ Lance J. LoRusso*
> Lance J. LoRusso
> Georgia Bar No. 458023
> Attorney for Plaintiffs

LoRusso Law Firm, PC.
1827 Powers Ferry Road SE
Building 8, Suite 200
Atlanta, GA 30339
770-644-2378
lance@lorussolawfirm.com

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| DAVID CAVENDER, | |
| MICHELE BEAGLE, | No.: _____ |
| MICHAEL DONDELINGER, | |
| Plaintiffs, | |
| v. | |
| CRAIG OWENS, *in his official and individual capacity,* | |
| Defendant. | |

## VERIFICATION OF DAVID CAVENDER

I, David Cavender, am a plaintiff in this action and fully familiar with the facts related in this Complaint and have personal knowledge of the same. I have read the complaint and understand its contents. After reviewing the complaint, I verify that all allegations contained therein are true to the best of my knowledge.

Pursuant to 28 U.S.C. §1746, I verify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2024.
COBB COUNTY, Georgia

_____
David Cavender

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID CAVENDER,
MICHELE BEAGLE,
MICHAEL DONDELINGER,

        Plaintiffs,

        v.

CRAIG OWENS, *in his official and individual capacity*,

        Defendant.

No.: _____

## VERIFICATION OF MICHELE BEAGLE

I, Michele Beagle, am a plaintiff in this action and fully familiar with the facts related in this Complaint and have personal knowledge of the same. I have read the complaint and understand its contents. After reviewing the complaint, I verify that all allegations contained therein are true to the best of my knowledge.

Pursuant to 28 U.S.C. §1746, I verify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2024.

Kennesaw, Georgia

Michele Beagle

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID CAVENDER,
MICHELE BEAGLE,
MICHAEL DONDELINGER,

                    Plaintiffs,                    No.: _____

          v.

CRAIG OWENS, *in his official and*
*individual capacity*,

                    Defendant.

## VERIFICATION OF MICHAEL DONDELINGER

I, Michael Dondelinger, am a plaintiff in this action and fully familiar with the facts related in this Complaint and have personal knowledge of the same. I have read the complaint and understand its contents. After reviewing the complaint, I verify that all allegations contained therein are true to the best of my knowledge. Pursuant to 28 U.S.C. §1746, I verify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2024.

COBB COUNTY, Georgia

                                        Michael Dondelinger